MARY V. BOWERS AND CLARA BARSE, Appellants, v. J. A. BRADLEY AND D. C. BRADLEY, Executors of Wm. Bradley, Deceased, AND THE INTERSTATE SUPPLY Co.

**Conversion:** EVIDENCE OF DEPRECIATION: *Nominal damages.* In an action to recover damages for the alleged wrongful conversion of corporate property, which was returned to the corporation, it is not error to sustain defendant's motion for the allowance of only nominal damages, on the ground that there was no evidence of any depreciation in the value of the property, where the only evidence as to its value when returned was that of a purchaser at a foreclosure sale, who stated that he paid a certain sum, "the amount of claims and interest," but did not state for what amount it was sold.

*Appeal from Appanoose District Court.*—HON. F. W. EICHELBERGER, Judge.

FRIDAY, DECEMBER 21, 1900.

PLAINTIFFS, owners of the minority of the shares of capital stock in the defendant corporation, the Interstate Supply Company, bring this action against the defendants, the executors, owners of the majority of said stock, to recover damages for the alleged wrongful conversion of the property of said corporation. A jury being waived, the case was tried to the court; and, at the close of the evidence for the plaintiffs, defendants' motion that the plaintiffs be allowed nominal damages only was sustained, and judgment rendered in favor of the plaintiffs for five dollars. Plaintiffs appeal.—*Affirmed.*

*Vermillion & Valentine* for appellants.

*Mabry & Payne* for appellees.

GIVEN, J.—I. The material facts are these: The defendant company was incorporated by M. W. Bowers, H. D.

Brown, and J. S. Wheeler, with a paid-up capital stock of
$6,000, one-half of which was owned by Bowers, and the
other half by Brown and Wheeler. The corporation engaged
in general merchandising at Mystic, Iowa, and continued
therein until July 8, 1895, at which time its stock of mer-
chandise was worth over $6,000. For some time prior to
July 8, 1895, Bowers and Brown were engaged, as a co-part-
nership, in mining and selling coal at Mystic, and had
become indebted to Bradley's Bank of Mystic, owned and
operated by William Bradley, now deceased. On July 8,
1895, William Bradley brought suit aided by attachment,
against the firm of Brown & Bowers, and caused the writ of
attachment to be levied on the stock of merchandise belonging
to the corporation, and upon the shares of stock held by
Brown and by Bowers. William Bradley acquired a lien
against the stock held by Wheeler, and, by sale, under special
execution in said attachment suit, became the owner of the
shares of Brown and of Wheeler, and 15 shares held by
Bowers, making 45 shares. Of the remaining 15 shares is-
sued by Bowers, 10 belonged to the plaintiff Mary V. Bowers,
and 5 to the plaintiff Clara Barse. Immediately after
the levy of the attachment the corporation notified the
sheriff of its ownership of the merchandise, and thereupon
William Bradley and another creditor of Brown & Bowers,
without notice to Brown & Bowers or to the corporation,
procured the appointment of a receiver to take charge of the
attached merchandise, which he did. The corporation was
indebted in the sum of about $1,000 to different parties, and
these claims William Bradley purchased and held against
the corporation. After acquiring the 45 shares and said
claims, William Bradley died, and the defendants were ap-
pointed executors of his will. Said executors and A. T.
Bradley, being legatees under the will, at the meeting of the
stockholders of the corporation in July, 1896, elected them-
selves to the various offices of the corporation, and thereafter
released the attachment of the goods, and they were turned

over by the receiver to the corporation. Shortly thereafter
these officers of the corporation executed a chattel mortgage
on the goods to secure a loan of $1,000 for 30 days, with
which the claims against the corporation purchased by Mr.
Bradley were paid to his estate. After 30 days this mort-
gage was foreclosed, and the goods sold to D. C. Bradley.

II.  Three reasons are set out for defendants' motion,
namely: First, that the goods were received by the corpora-
tion from the receiver as its property, and there is no evi-
dence that there was any deterioration of the value of the
goods, and therefore no evidence that the plaintiffs or the
corporation sustained any actual damage by reason of the
detention of the property; second, that there is no evidence
that plaintiffs are the owners of any of said shares of stock;
and, third, that there is no allegation or evidence of malice
in suing out and levying said attachment. As to the second
and third reasons, we have only to say that they are not well
founded. The plaintiffs own shares of stock as claimed,
and while, because of non-residence, there was probable
cause for suing out the attachment against Brown & Bowers,
there was no cause whatever for seizing the property of the
corporation under it. The real contention is whether, in
view of the fact that the goods were returned to and re-
ceived by the corporation, the plaintiffs were damaged by
their seizure and detention. If the goods were of equal value
when returned as when taken, the plaintiffs were not dam-
aged. The evidence relied upon as showing depreciation
in value is the price for which the goods were sold at the
foreclosure sale. It is assumed that they were sold for
$1,036—an amount mush less than their value when seized.
Concede that this kind of evidence is competent to show the
value of the goods when returned; yet we think it fails to
do so in this case. The only evidence on this subject is that
of D. C. Bradley. He says all the property of the corpora-
tion was sold, and that he paid $1,036, "the amount of the
claims and interest," but he does not say for what amount the

property was sold. There is no evidence whatever showing that the goods were less valuable when returned to the corporation than when taken from it, and therefore there was no error in sustaining defendants' motion.—AFFIRMED.